The **BELLINGHAM NATIONAL BANK,** **a national banking association,** **Plaintiff,**

**and**

**Seattle-First National Bank, as trustee for Peter Pan Seafoods, Inc., and Peter Pan Seafoods, Inc., Intervenor Plaintiffs,**

v.

**OIL SCREW PACIFIC HORIZON, Official No. 224546, and Jerald V. Newell, Defendants.**

**Admiralty No. C82–1429B.**

United States District Court, W.D. Washington.

June 8, 1984.

---

Carl F. Roehl, Jr., Roehl & Roehl, Bellingham, Wash., for plaintiff.

Kyle R. Samuels, Riddell, Williams, Bullitt & Walkinshaw, Seattle, Wash., for intervening plaintiffs.

## ORDER

BEEKS, Senior District Judge.

Bellingham National Bank (BNB) instituted this action on November 30, 1982 to foreclose a preferred ship mortgage on the O/S PACIFIC HORIZON, and to recover on the debt from Jerald Newell. The ship mortgage was recorded on February 23, 1983. As of March 23, 1983, the sum due and owing to BNB was $134,665.98, plus interest. An interlocutory sale was ordered and the vessel was sold for $105,-000.00 on June 24, 1983. Peter Pan, Inc. (Peter Pan) was granted leave to intervene on January 20, 1983 and claims a preferred maritime lien for the amount of $16,000.00 plus interest on the O/S PACIFIC HORIZON for the alleged furnishing of a purse seine to the PACIFIC HORIZON.

Plaintiff BNB moves for summary judgment against intervenor-plaintiff Peter Pan, determining that:

1) Peter Pan does not have a maritime lien on the O/S PACIFIC HORIZON; or if

2) Peter Pan does have a maritime lien on O/S PACIFIC HORIZON, BNB's preferred ship mortgage is prior thereto; or if

3) Peter Pan's lien is prior to BNB's mortgage, such lien does not include interest.

Intervenor-plaintiff Peter Pan also moves for summary judgment determining that:

1) Peter Pan has a valid preferred maritime lien on the PACIFIC HORIZON;

2) Peter Pan's maritime lien has priority over BNB's lien; and

3) Peter Pan is entitled to satisfy its lien claim, plus accrued interest from the proceeds of the sale of the PACIFIC HORIZON.

BNB and Peter Pan have submitted an agreement of facts.

In October, 1977, Peter Pan advanced $16,000.00 to Olney, the previous owner of the PACIFIC HORIZON, for the purchase of a purse seine to be used on the O/S DOLPHIN. On October 7, 1977, Olney executed a promissory note to Peter Pan for $16,000.00 secured by a chattel mortgage on the seine. In December, 1977, Olney purchased the PACIFIC HORIZON and transferred the net to that vessel with Peter Pan's knowledge and consent. Peter Pan alleges that it intended to claim a lien on the PACIFIC HORIZON when the net was transferred to the new vessel. Peter Pan's intention, however, was not discussed with Olney.

In December, 1979, Olney agreed to sell the PACIFIC HORIZON to Newell. Newell applied to BNB for a loan to enable him to purchase the PACIFIC HORIZON. BNB required that its preferred ship mortgage have priority over any other lien. BNB representatives and the financial vice president of Peter Pan communicated several times regarding the loan to Newell. Peter Pan was informed that BNB intended to take a preferred ship mortgage on the PACIFIC HORIZON as security for the loan to Newell. During the course of these conversations, BNB's representatives did not ask whether Peter Pan claimed a maritime lien on the vessel and Peter Pan's representatives did not independently inform the bank of such a claim.

On January 14, 1980, Newell executed a chattel mortgage in Peter Pan's favor, securing "one complete salmon Purse Seine Net." Newell also signed a promissory note in Peter Pan's favor on the same day for $16,000.00. It was the intent of Peter Pan, Olney, and Newell that: Olney's obligation to pay Peter Pan $16,000.00 for the net be released and extinguished; Newell assume Olney's obligation; Olney transfer his ownership in the net to Newell; and, the net be used by Newell in his fishing operations on the PACIFIC HORIZON. Peter Pan never informed Newell that it was claiming a maritime lien on the PACIFIC HORIZON. In fact, on February 14, 1980, Newell executed an affidavit entitled "Prior and Subsequent Liens Affidavit" alleging no prior liens on the PACIFIC HORIZON.

From February 14, 1980 to date, Newell has not made any payment on the note. As of November 30, 1983, the interest due Peter Pan on said debt was $10,316.28.

BNB argues that if Peter Pan "furnished" the net pursuant to 46 U.S.C. § 971, this furnishing was to the O/S DOLPHIN, not the O/S PACIFIC HORIZON. Peter Pan contends, however, that when it consented to the transfer and use of the net on board the PACIFIC HORIZON, Peter Pan was relying on the credit of the PACIFIC HORIZON and, therefore, a lien attached when the net was transferred to that vessel.

The applicable statutory law relating to maritime liens is 46 U.S.C. § 971, which states:

> Any person furnishing repairs, supplies ... or other necessaries, to any vessel whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

It is clear that a preferred ship mortgage lien has priority over all claims against the vessel except preferred maritime liens, which includes a lien for the furnishing of supplies or necessaries arising prior in time to the recording of a preferred ship mortgage, and expenses, fees and costs allowed by the court. 46 U.S.C. §§ 953(a)–953(b).

The issue before the court is whether in the circumstances heretofore related Peter Pan acquired a lien on the PACIFIC HORIZON. The answer is clearly negative. Maritime liens are very often secret and unrecorded and, as such, they are strictly construed. The *PRESIDENT ARTHUR*, 279 U.S. 564, 568, 49 S.Ct. 420, 421, 73 L.Ed. 846 (1929). Notwithstanding what the result might have been between Peter Pan and Olney, it is clear that under the present circumstances, the net was not "furnished" to the PACIFIC HORIZON

within the meaning of 46 U.S.C. § 971. *See Seaboard Fisheries Co. v. Piedmont & Georges Coal Co.*, 253 F. 20, 28 (1st Cir. 1918), aff'd, 254 U.S. 1, 41 S.Ct. 1, 65 L.Ed. 97 (1920). Instead, the net was furnished to the DOLPHIN when Peter Pan advanced the money to Olney with the understanding that the net be used on the DOLPHIN. Accordingly, it is

ORDERED that Peter Pan does not have a maritime lien on the O/S PACIFIC HORIZON.